**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

Lori Z.,                                )
                                        )
            *Plaintiff*,                 )
                                        )   Case No. 3:23-cv-50001
    v.                                   )
                                        )   Magistrate Judge Lisa A. Jensen
Martin O'Malley,                         )
Commissioner of Social Security,         )
                                        )
            *Defendant*.                 )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lori Z. brings this action under 42 U.S.C. § 405(g) seeking a remand of the

decision denying her applications for disability insurance benefits and supplemental security

income.[1] For the reasons set forth below, Plaintiff's motion for summary judgment is denied, the

Commissioner's motion is granted, and the ALJ's decision is affirmed.

## BACKGROUND

On August 13, 2020, Plaintiff filed applications for disability insurance benefits and

supplemental security income, alleging a disability beginning on December 31, 2004, because of

being blind or having low vision, state 3 kidney disease, insulin dependent diabetes, gastroparesis,

and post-traumatic stress disorder ("PTSD"). R. 267–69, 285. Plaintiff was 27 years old on her

alleged onset date and 43 years old at the time she filed her applications.

Following a hearing, an administrative law judge ("ALJ") issued a decision in June 2022,

finding that Plaintiff was not disabled. R. 16–28. The ALJ found that prior to Plaintiff's date last

insured, namely December 31, 2009, she did not have any severe impairments. However, as of

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings
pursuant to 28 U.S.C. § 636(c). Dkt. 6.

August 13, 2020, Plaintiff's application date, the ALJ found that Plaintiff had the following severe

impairments: obesity, diabetes, chronic kidney disease stage 3, diabetic retinopathy, delusional

disorder in partial remission, PTSD, anxiety, and depression. The ALJ determined that Plaintiff's

impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff

had the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except no climbing of ladders, ropes, or scaffolds; no work around
> unprotected heights and dangerous moving machinery; able to avoid
> ordinary hazards in a workplace, such as boxes on the floor and doors ajar;
> able to read ordinary print, such as in newspapers and books; not able to
> drive at night; not able to discriminate details of small objects at a distance;
> can understand, remember, and carry out simple, routine 1-2 step
> instructions, and can have no more than occasional interaction with
> coworkers and the general public.

R. 22. The ALJ determined that Plaintiff is unable to perform her past relevant work, but

there were other jobs that existed in significant numbers in the national economy that she could

perform, namely light, unskilled jobs.

After the Appeals Council denied Plaintiff's request for review on November 10, 2022, R.

1, she filed the instant action. Dkt. 1.

### STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of

the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If

supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.*

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison

Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every

piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."

*Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## DISCUSSION

Plaintiff makes four arguments challenging the ALJ's decision. Specifically, Plaintiff argues that the ALJ erred by: (1) ignoring a treating source medical opinion; (2) improperly cherry-picking evidence; (3) failing to properly account for Plaintiff's testimony regarding modifications to her activities of daily living; and (4) relying on vocational expert ("VE") testimony that conflicted with the Dictionary of Occupational Titles ("DOT") and provided an unreliable estimate of the number of jobs in the national economy. For the reasons discussed below, Plaintiff's arguments do not warrant a remand.

## I. Treating Source Medical Opinion

Plaintiff first argues that the ALJ erred by not considering the opinions of her counselor, Cathie Martinez. Plaintiff points to a specific statement that Martinez included in a handful of progress notes:

> Clinical Perspective: Lori is diagnosed with Delusional Disorder, in partial remission, and PTSD. Her symptoms include depressed mood, anxiety, appetite changes, decreased energy, hopelessness, sleep disturbance, difficulty concentrating, flashbacks, avoidance, and hypervigilance. Lori's delusions are currently in remission with medication. Lori is unable to work, drive, and she is fearful of being in public places and prefers not to go to stores.

3

*See* Pl.'s Mot. at 6, Dkt. 15 (citing R. 1868, 1871, 1873–74). Plaintiff argues that Martinez's statements in her treatment notes are "medical opinions" as defined by the regulations and that the ALJ's failure to consider Martinez's opinions is an error that requires remand.

The social security regulations define a medical opinion as:

a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

Under the regulations, a "medical opinion" is distinct from "objective medical evidence," which concerns "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). A medical opinion is also distinct from "other medical evidence," which includes "judgments about the nature and severity of [a claimant's] impairments, [ ] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). For claims filed after March 27, 2017, an ALJ is required to evaluate each medical opinion in the record using the following factors: supportability, consistency, relationship with the claimant,

specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c).

Accordingly, this Court must determine whether the statements Martinez made in her treatment notes are considered "medical opinions" that the ALJ was required to evaluate pursuant to 20 C.F.R. § 404.1520c(c) or "other medical evidence" that did not require such an analysis. The Court concludes that Martinez's statements are "other medical evidence."

Much of Martinez's statements merely recount Plaintiff's diagnoses and describe her symptoms, rather than offer any limitation in work activity caused by Plaintiff's impairments. *See Kernstein v. Kijakazi*, No. 1:20-CV-300-DRL, 2021 WL 5356103, at *2–3 (N.D. Ind. Nov. 17, 2021). Treatment notes containing symptoms and diagnoses generally do not qualify as medical opinions because such notes do not offer specific limitations in work activity caused by a claimant's impairments. *Sara E. v. Kijakazi*, No. 20 C 03895, 2022 WL 4182404, at *4 (N.D. Ill. Sept. 13, 2022) (citing *Megan G. v. Saul*, No. 19 C 5237, 2021 WL 2105038, at *3 (N.D. Ill. May 25, 2021), *aff'd sub nom. Garza v. Kijakazi*, No. 21-2164, 2022 WL 378663 (7th Cir. Feb. 8, 2022)).

Martinez's statement that Plaintiff is "fearful of being in public places and prefers not to go to stores," is not a medical opinion under the regulations because it appears to be a restatement of Plaintiff's subjective allegations and does not offer a specific limitation in work activity caused by her impairments. Martinez's statement that Plaintiff is unable to drive likewise is not a medical opinion. Rather, it again appears to be a restatement of Plaintiff's subjective reports.

Even if the statement that Plaintiff is unable to drive constitutes a medical opinion under the regulations, the ALJ's failure to analyze this statement for consistency and supportability under the regulations would be harmless error. *See* 20 C.F.R. § 404.1520c(b)(2) (stating that

supportability and consistency are the most important factors to consider when evaluating a medical opinion). Plaintiff testified that she was unable to get a driver's license because her eye doctor found her blind in one eye. R. 42–43. However, there is no evidence in the medical records that Plaintiff was deemed unable to drive because of a vision impairment (consistency). The consultative examiner, ophthalmologist Dr. Nagpal, found only that "nighttime driving may be difficult," but did not state that Plaintiff was precluded from driving altogether. R. 1440. Likewise, state agency physicians Drs. Dow and Mikell found only that Plaintiff's vision impairments would cause difficulty with driving at night and her ability to discriminate details of small objects at a distance. R. 112–13, 136–38. Furthermore, Martinez provides no explanation for why she came to the conclusion that Plaintiff is unable to drive (supportability).

Finally, to the extent that Martinez was assessing Plaintiff's impairment-related limitations by stating that "Lori is unable to work," the ALJ had no obligation to provide an analysis on how she considered that statement. Statements that a claimant is unable to work are statements "on an issue reserved to the Commissioner." *See* 20 C.F.R. § 404.1520b(c); *see also Albert v. Kijakazi*, 34 F.4th 611, 616 (7th Cir. 2022) ("[T]he ultimate determination of disability is reserved for the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations.").

Accordingly, because Martinez's statements are "other medical evidence" that the ALJ was not required to evaluate pursuant to 20 C.F.R. § 404.1520c, the Court evaluates the ALJ's decision not to discuss Martinez's statements "under the generally applicable framework that an ALJ need not discuss every piece of evidence in the medical record and errs only where she ignores an entire line of evidence contrary to the ruling." *Sara E.*, 2022 WL 4182404, at *4 (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). Here, while the ALJ did not expressly mention Martinez's

statements, she did carefully and thoroughly consider the underlying medical conditions discussed by Martinez and explained why those impairments did not warrant any limitations beyond the RFC that the ALJ assessed. R. 24–25. Therefore, the ALJ did not ignore an entire line of evidence contrary to her conclusion, and as a result, remand is not warranted on this ground.

Nevertheless, this Court must address one last argument raised by Plaintiff in her reply brief. Plaintiff asserts that the Commissioner's argument that Martinez's statements were not medical opinions "is a clear violation of the *Chenery* doctrine, as the ALJ does not make this argument in the decision." Pl.'s Reply at 1, Dkt. 25. However, Plaintiff's argument stretches the *Chenery* doctrine too far by suggesting that it is a *Chenery* violation for the Commissioner to raise any argument or explanation on appeal that an ALJ did not opine on.

"Under the Chenery doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012). Accordingly, this Court's review "is limited [ ] to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Here, had the ALJ evaluated Martinez's statements as medical opinions and subsequently discounted them, then it would be a *Chenery* violation for the Commissioner to argue that Martinez's statements were not medical opinions. *See, e.g.*, *Jermel L. v. Kijakazi*, No. 21 C 4217, 2022 WL 4367505, at *2 (N.D. Ill. Sept. 21, 2022). But the ALJ did not – and was not required to – evaluate Martinez's statements as opinion evidence. Accordingly, it is not a *Chenery* violation for the Commissioner to explain, on appeal, why the ALJ was not required to evaluate those statements as medical opinions under the relevant regulations.

## II.    Cherry-Picking Evidence

Plaintiff argues that the ALJ erred by failing to "read the medical record as a whole and instead picks out only evidence favorable to her conclusion." Pl.'s Mot. at 7, Dkt. 15. Specifically, Plaintiff faults the ALJ for relying on two records: (1) a May 26, 2020 mental health assessment, which noted that Plaintiff had good psychological reasoning and that her delusions were in remission with medication, R. 1307; and (2) a July 23, 2020 progress note from an annual appointment where Plaintiff denied any depression and denied needing help with daily activities such as housework and getting to places beyond walking distance, R. 673–74.

An ALJ has an obligation to consider all relevant medical evidence and "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir.2009)). But "it is well-established that an ALJ need not discuss every piece of evidence in the record, so long as she does not ignore an entire line of evidence that supports a finding of disability." *Dzafic v. Kijakazi*, No. 22-2090, 2023 WL 2536340, at *5 (7th Cir. Mar. 16, 2023) (unpublished) (internal quotation marks and citation omitted).

As to the May 2020 mental health assessment, Plaintiff accuses the ALJ of using it to mischaracterize her diagnosis for delusional disorder and ignore evidence that her symptoms "clearly wax[] and wane[]." Pl.'s Mot. at 8, Dkt. 15. Plaintiff supports her argument by pointing to a treatment note from August 2021, which indicates that her remission from her delusional disorder was reduced from full remission to only "partial remission." R. 1858. However, the ALJ did not ignore that evidence. The ALJ determined that as of August 13, 2020, Plaintiff had a severe impairment of "delusional disorder in partial remission." R. 19. In her RFC discussion, the ALJ accurately noted that, in June 2020, Plaintiff's delusional disorder was in remission with medication, and her mental status examination was largely unremarkable. R. 24, 1288-89. And the

8

record – including those records that Plaintiff cites to in support of her cherry-picking argument – consistently indicate that, even during times where Plaintiff's delusions were in partial remission, instead of full remission, her delusions were still well managed with medication. *See, e.g.*, R. 1307, 1858, 1874. Thus, the ALJ did not mischaracterize or disregard an entire line of evidence regarding Plaintiff's delusional disorder.

Plaintiff also argues that the ALJ disregarded her testimony and frequent complaints to treating providers that she was anxious around men. Plaintiff accuses the ALJ of relying too heavily on her testimony that she could shop alone to discount her allegation that she experienced disabling anxiety around men. But again, the ALJ did not ignore this line of evidence. The ALJ considered Plaintiff's allegations that she experienced anxiety around men, as evidenced by the fact that the ALJ rendered an RFC that limited Plaintiff to only occasional interaction with coworkers and the public. The ALJ acknowledged that Plaintiff experienced anxiety and difficulty being around men, but that Plaintiff also reported being able to manage her anxiety when shopping around men in stores on her own. R. 25, 1, 1882. The ALJ also considered that the frequency of Plaintiff's complaint of daily anxiety attacks was not reported to any of her treating providers. For these reasons, the Court concludes that the ALJ did not ignore any line of evidence regarding Plaintiff's delusional disorder or anxiety. *See*, *e.g.*, *Denton,* 596 F.3d at 426 (explaining that an ALJ does not engage in impermissible cherry-picking when she "specifically addresse[s] all the evidence that [the plaintiff] points out" but "d[oes] not assign the significance to it that [the plaintiff] prefers").

As to the July 2020 progress note, Plaintiff again accuses the ALJ of relying on this record to mischaracterize her mental impairments. Plaintiff argues that the ALJ improperly relied on her statement denying any depression and the need for help with daily activities to show that Plaintiff

"was not in need of mental health treatment by July 2020." Pl.'s Mot. at 7, Dkt. 15. The Court disagrees. The ALJ specifically acknowledged that Plaintiff "ha[d] been in regular mental health treatment," after having begun outpatient mental health treatment in June 2015. R. 24–25. Accordingly, the ALJ did not cherry-pick this record as evidence that Plaintiff no longer needed mental health treatment by July 2020. Therefore, Plaintiff has not shown that the ALJ's evaluation of the record warrants a remand.

III.    **Activities of Daily Living**

Plaintiff argues that the ALJ did not properly consider the modifications she made to her activities of daily living, and erred by interpreting Plaintiff's modifications of daily activities as evidence that she was not disabled.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

Plaintiff testified to several modifications of her daily activities, including that: she could only cook or do household chores for 10 minutes before needing to take a 15–20-minute break; on most days, she could not walk a block without resting; she had to make adjustments in order to

10

manage her anxiety when she encountered men while shopping; and she could read a book or newspaper if she wore corrective lenses and read only "a little bit at a time." R. 46, 51–52. The ALJ did not expressly mention each portion of Plaintiff's testimony regarding her modifications to activities of daily living. But, as discussed above, the ALJ was not required to address every piece of evidence in the record, so long as she did not ignore an entire line of evidence that supports a finding of disability. *See Dzafic*, 2023 WL 2536340, at *5. The ALJ did not ignore any such evidence here.

Regarding household chores and walking, the ALJ pointed to several records where Plaintiff had a normal gait and reported that she was active with household chores and walking intermittently at home or outside. R. 24; R. 647, 655, 714, 1475, 1506. Plaintiff also did not regularly report fatigue or the need to lie down after eating to her treating providers. Nevertheless, the ALJ gave Plaintiff "the benefit of the doubt" and limited her to light work. R. 25. Regarding Plaintiff's anxiety about being around men, the ALJ addressed – and gave credence to – this testimony by including a limitation in the RFC that Plaintiff could only have occasional interaction with coworkers and the public.

Regarding Plaintiff's vision, the ALJ considered that treatment notes showed improvement with treatment and that Plaintiff did not regularly complain of vision issues to her treaters. The ALJ also discussed the opinions of physicians who reviewed Plaintiff's ophthalmological records, namely the state agency physicians and the ophthalmologist who administered a consultative examination. R. 25-26; R. 113, 129, 1439-42. The ALJ noted that the initial-level and reconsideration-level state agency physicians "opined that the claimant could function at all exertional levels, but she would be limited in her left eye with far acuity, depth perception, accommodation, and field of vision," and that "nighttime driving might be difficult." R. 25. In

considering these opinions, the ALJ included limitations in the RFC for unprotected heights and dangerous moving machinery, discriminating details of small objects at a distance, and driving at night. Thus, while the ALJ did not expressly mention each portion of Plaintiff's testimony regarding her modifications to activities of daily living, she did not ignore any line of evidence regarding Plaintiff's testimony.

Plaintiff also argues the ALJ erred by conflating her ability to do modified daily activities with her ability to maintain full time work. "An ALJ may not equate activities of daily living with those of a full-time job." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). However, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of his impairments was credible or exaggerated.'" *Morrison v. Saul*, 806 F. App'x 469, 475 (7th Cir. 2020) (unpublished) (quoting *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016)).

Here, the ALJ did not equate Plaintiff's activities of daily living with her ability to perform full time work. Rather, the ALJ considered the activities of daily living to assess whether Plaintiff's symptoms were as disabling as she had alleged. For example, while Plaintiff testified that she could not cook, clean, do dishes, or walk for more than 10 minutes at a time, the ALJ noted that Plaintiff had not reported such fatigue to her treating providers, and pointed to several records where Plaintiff reported that she stayed active by walking and stretching and denied needing help with housework or getting places. R. 647, 674, 1490, 1770. In evaluating Plaintiff's allegations of depression and anxiety, the ALJ discussed that Plaintiff was able to maintain hobbies such as making computer designs and listening to the radio and maintained a social life with her friends. R. 24-25; R. 51, 1889, 1891. The ALJ also pointed to records where Plaintiff denied depression. R. 673. Therefore, the ALJ concluded that Plaintiff's symptoms were not as limiting as she alleged.

Plaintiff has not shown that the ALJ erred in considering her activities of daily living or that her subjective symptom analysis was patently wrong. As such, a remand is not warranted on this ground.

## IV.    Vocational Expert

Lastly, Plaintiff argues that the ALJ erred in relying on the VE's testimony to find that she could perform other work existing in significant numbers in the national economy. Plaintiff's argument is two-fold. Plaintiff argues that the ALJ failed to resolve a conflict between the VE's testimony and the DOT and improperly relied on the VE's "suspiciously round" jobs numbers. Pl.'s Mot. at 12, Dkt. 15.

The Commissioner attempts to circumvent this argument at the outset by arguing that, because Plaintiff did not challenge the VE's testimony during the hearing, she has forfeited any argument challenging that testimony on appeal. Def.'s Resp. at 11, Dkt. 20. Plaintiff does not dispute that she failed to challenge the VE's testimony at the hearing. As such, this Court agrees that Plaintiff has forfeited her argument that the VE's testimony was "deficient because of [his] suspiciously round numbers indicating that at best this was an estimate." Pl.'s Reply at 6, Dkt. 25.

On numerous occasions, the Seventh Circuit has held that a claimant who fails to question or raise an objection to the VE's testimony during the hearing forfeits any challenge to the job number estimates. *See Coyier v. Saul*, 860 Fed. App'x 426, 427–28 (7th Cir. 2021) (unpublished) ("Coyier waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates."); *Collins v. Berryhill*, 743 Fed. App'x. 21, 26 (7th Cir. 2018) (unpublished) ("Collins forfeited [his challenge to the VE's testimony] by not objecting at the hearing."); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("[Liskowitz] forfeited [her argument about the VE's sources] by failing to object to the VE's testimony during the hearing.");

*Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004), on reh'g, 368 F.3d 691 (7th Cir. 2004) ("[B]ecause Barrett's lawyer did not question the basis for the [VE's] testimony, ... any objection to it is forfeited."). Plaintiff did not object to the VE's testimony about job numbers at the hearing. As a result, the ALJ was entitled to accept the VE's testimony, and Plaintiff has forfeited this argument on appeal. *See Fetting v. Kijakazi*, 62 F.4th 332, 337–38 (7th Cir. 2023); *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) ("Brown also forfeited her argument regarding the vocational expert's testimony about the number of positions for each of the six jobs by failing to object during the hearing."); *Donahue v. Barnhart*, 279 F.3d 441, 446–47 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning [at the hearing], an ALJ is entitled to accept the vocational expert's conclusion.... Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late.").

However, as it relates to Plaintiff's argument that the ALJ failed to resolve a conflict between the VE's testimony and the DOT, this Court disagrees with the Commissioner that Plaintiff has forfeited the issue by failing to object at the hearing. The Seventh Circuit has "repeatedly noted that if a vocational expert's testimony appears to *conflict* with the DOT, the ALJ must obtain a reasonable explanation for the apparent conflict, and that a claimant's failure to object during a hearing cannot excuse an ALJ's failure to do so." *Brown*, 845 F.3d at 254-55 (internal quotation marks and citation omitted); *see also* SSR 00-4p, 2000 WL 1898704, at *4. However, ALJs are only required to investigate and resolve *apparent* conflicts. As such, if the claimant fails to object at the time of the hearing, the claimant must show on appeal that the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). "Thus, an ALJ's affirmative duty extends beyond merely asking the VE whether his testimony is consistent with the DOT; the ALJ also must 'elicit

14

a reasonable explanation for any discrepancy.'" *Cardenas v. Berryhill*, No. 17 CV 8242, 2018 WL 5311899, at *6 (N.D. Ill. Oct. 26, 2018) (quoting *Overman*, 546 F.3d at 463).

Here, the parties do not dispute that the ALJ satisfied the first part of her duty by asking the VE whether his testimony was consistent with the DOT. Nonetheless, Plaintiff argues that "the ALJ relied on flawed testimony from the VE and found that [Plaintiff] could perform work in the national economy which clearly was in direct opposition to the ALJ's RFC finding." Pl.'s Mot. at 15, Dkt. 15. Plaintiff asserts that the VE's testimony "was on its face deficient enough to alert the ALJ that there were errors in his testimony, but she relied on his conclusions anyway." Pl.'s Mot. at 14, Dkt. 15. However, Plaintiff fails to identify how or why there was an apparent conflict that the ALJ was required to investigate and resolve.[2]

The VE testified that a person with Plaintiff's RFC could perform the jobs of collator operator (DOT 208.685-010), small products assembler (DOT 706.684-022), and coin machine collector (DOT 292.687-010). Plaintiff argues that because the ALJ "limited [Plaintiff] to being unable to discriminate small objects," an occupation titled "small parts" or "coin operator" "should have made the ALJ suspicious that the VE's testimony was less than credible." Pl's Mot at 12–13, Dkt. 15. But, as the Commissioner points out, the ALJ did not broadly find Plaintiff "unable to discriminate details of small objects," rather, she found that Plaintiff was "not able to discriminate details of small objects *at a distance*." R. 22, 60 (emphasis added). According to the DOT, none of the occupations that the VE listed require a worker to discriminate small objects at a distance. *See* DOT §§ 208.685-010, 706.684-022, 292.687-010 (4th ed. 1991), https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT [https://perma.cc/U3K2-5F32] (last

---

[2] In fact, in his reply, Plaintiff does not even attempt to address the Commissioner's arguments in response to this issue. Pl.'s Reply at 6, Dkt. 25; *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in waiver).

visited Apr. 12, 2024).[3] Therefore, the Court sees no apparent conflict that would have triggered the ALJ's obligation to probe the VE further.

Plaintiff also argues that the ALJ should have been alerted to "possible contradictions with the DOT" when the VE testified to jobs contrary to the ALJ's RFC limitations for interacting. Plaintiff faults the VE for identifying jobs requiring only occasional interaction with others, but no limitations for interaction with men. Pl.'s Mot. at 12, Dkt. 15. This argument is also unpersuasive.

When posing hypothetical questions to a VE, an ALJ is only required to include the limitations supported by the record. *See Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021); *Outlaw v. Astrue*, 412 Fed. App'x 894, 898 (7th Cir. 2011) (unpublished) ("The ALJ needed only to include limitations in his RFC determination that were supported by the medical evidence and

---

[3] Collator operator (clerical), DOT 208.685-010: "Tends machine that assembles pages of printed material in numerical sequence: Adjusts control that regulates stroke of paper pusher, according to size of paper. Places pages to be assembled in holding trays. Starts machine. Removes assembled pages from machine."

Small products assembler (any industry), DOT 706.684-022: "Performs any combination of following repetitive tasks on assembly line to mass produce small products, such as ball bearings, automobile door locking units, speedometers, condensers, distributors, ignition coils, drafting table subassemblies, or carburetors: Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using handtools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line. May be assigned to different work stations as production needs require or shift from one station to another to reduce fatigue factor. May be known according to product assembled."

Coin machine collector, DOT 292.687-010: "Collects coins or coin boxes from parking meters or telephone pay stations: Unlocks telephone faceplate and removes box containing money. Inserts empty box and locks faceplate. Tags boxes to identify pay stations. Reports malfunctioning telephones or parking meters to repair department. Delivers boxes to central depot for machine counting, tabulating, and customer payment. May count coins and compute amount due subscriber, according to difference between minimum guaranteed rate and total cash in box. May pay subscriber percentage refund. May adjust or repair parking meters, using handtools. May keep records of collections, balances due, and refunds. May be designated according to type of equipment involved as Parking-Meter-Coin Collector (business ser.); Telephone Coin-Box Collector (tel. & tel.)."

that the ALJ found to be credible."). The ALJ accounted for Plaintiff's severe anxiety and PTSD by including a restriction that limited Plaintiff to only occasional interaction with coworkers and the public. R. 22. The ALJ determined that the record did not support a greater limitation relating to interaction with men, and therefore, did not include a corresponding limitation in the RFC and the hypothetical to the VE. R. 25.

In response to the ALJ's hypothetical for jobs with occasional interaction with coworkers and the public, the VE testified that he limited the jobs to those requiring "work[] with things, not with people as a function of the job duties." R. 61. The VE accounted for "superficial interaction with all people." R. 64. He further explained that, based on his experience, the jobs that he identified do not require more than incidental contact with people to complete tasks. R. 64. The Court sees no apparent conflict that would have required the ALJ to investigate further. Therefore, Plaintiff has not shown that the ALJ erred in her determination at step five.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, the Commissioner's motion is granted, and the ALJ's decision is affirmed.

Date: April 12, 2024                    By:    _Lisa A. G_____
                                               Lisa A. Jensen
                                               United States Magistrate Judge